IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK HYMAN | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| v. | : | |
| | : | **10-499** |
| COMMISSIONER LOUIS GIORLA, | : | |
| et. al. | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**STENGEL, J.**                                                                                       **March 5, 2014**

Frank Hyman brings this prisoner's civil rights civil action pursuant to 42 U.S.C. §1983. Mr. Hyman has sued the City of Philadelphia and various prison officials claiming he was subjected to conditions of confinement in violation of the Fourteenth Amendment. He asserts a second count for and First Amendment retaliation. Defendants move for summary judgment. I will grant defendants' motion as to Mr. Hyman's First Amendment claims. Otherwise, the motion is denied. I will also deny Mr. Hyman's request for oral argument.

**I.     BACKGROUND**

On December 22, 2006, Frank Hyman was incarcerated at the Curran-Fromhold Correctional Facility (CFCF) as a pre-trial detainee.[1] Defs.' Statement of Material Facts (doc. No. 53-2) ¶¶ 1-3. While awaiting trial, Mr. Hyman had a number of disciplinary problems. During 2007 and 2008, prison authorities searched Mr. Hyman's cell and

---

[1] Mr. Hyman was charged with and ultimately found guilty of attempted murder and aggravated assault.

found contraband on four separate occasions.[2]  Id. ¶¶ 9, 11, 12 and 14.  The contraband included weapons, money, cell phones and marijuana.  Id.  On July 10, 2008, Mr. Hyman was paced in administrative segregation at CFCF due to his disciplinary history involving contraband.  Id. at ¶¶ 16 and 17.

Administrative segregation is a secure housing unit reserved for violent inmates, inmates who need protection from the general prison population and high-profile inmates.  Pl.'s Statement of Material Facts (doc. No. 54-2) ¶¶ 1, 2.  Inmates in administrative segregation are allowed out of their cells for one hour a day and have no interaction with other inmates during this time.  Id. ¶ 7.  Inmates are placed in a full system of mechanical restraints[3] for the recreation period and can spend their one hour in the yard, the recreation cage or the law library cage.[4]  Id. ¶¶ 4, 9, 10 and 14.  The restraints caused Mr. Hyman pain, lacerations, rash, soreness, bruising, numbness and edema of his extremities.  Id. ¶¶ 32 and 36.  The prison medical staff treated his injuries.  Id. ¶¶ 33 – 37.

An inmate stays in administrative segregation until the Special Management Review Committee (SMRC) recommends the inmate's release and the warden approves.  Id. ¶¶ 17, 20.  Deputy Warden May chaired the committee.  Id. ¶ 47.  Mr. Hyman filed eleven grievances against Deputy Warden May while in administrative segregation.  Id. ¶ 39.  The SMRC considered and denied releasing Mr. Hyman into the general prison

---

[2]  During this period, Mr. Hyman was housed at various institutions in the Philadelphia Prison System.

[3]  The mechanical restraints include leg irons and handcuffs connected to a waist chain.

[4]  The cage is fully secured, enclosed and measures approximately 8 feet tall by 5 feet wide.

population seventeen times.  Id. ¶ 44.  At Mr. Hyman's request, Deputy Warden May approved Mr. Hyman's transfer to the Philadelphia Institutional Corrections Center (PICC) on March 11, 2009.  Id. ¶ 65.  On April 14, 2009, the SMRC at PICC released Mr. Hyman into the general prison population.  Id. ¶ 68.

**II.   STANDARD OF REVIEW**

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

### III. DISCUSSION

####   A.)   Count 1 – Conditions of Confinement in violation of the Fourteenth Amendment.

Plaintiff charges defendants with unconstitutional conditions of confinement based on the defendants' excessive and unnecessary use of handcuffs and mechanical restraints. Defendants move for summary judgment arguing that "courts have found conditions of confinement more restrictive than those experienced by the plaintiff in the instant matter, to not be in violation of the 8th Amendment." Defs.' Br. (doc. no. 53) 7. Defendants have completely misinterpreted the law governing Fourteenth Amendment conditions of confinement claims; therefore, I will deny summary judgment.

Because Mr. Hyman was a pre-trial detainee, he was protected by the Fourteenth Amendment, not Eighth Amendment, when he sustained his alleged injuries. While the Eighth Amendment protects a convicted prisoner from cruel and unusual punishment, "a detainee **may not be punished** prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979) (emphasis added) (citations omitted). Thus, a restraint is permissible if it is "rationally related to a legitimate non-punitive government purpose." Id. at 561. On the other hand, a court may infer a punitive intent if it appears that the restraint is arbitrary, purposeless or excessive in relation to the stated non-punitive reason. Id. at 539, 61. As such, Bell's prohibition against punishment provides greater protection than that which the Eighth Amendment affords.

Defendants' motion relies on Eighth Amendment jurisprudence. While defendants recognize that this is a Fourteenth Amendment claim, they argue that "the parameters of such an interest are coextensive with the [Eighth] Amendment's prohibition against cruel and unusual punishment." Defs.' Br. 5-6. This is an incorrect statement of the law and is based on a First Circuit case.[5] Suprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005).[6] The Third Circuit has consistently applied Bell's "no-punishing-pretrial-detainees" rule; therefore, I too must analyze the defendant's legitimate non-punitive purpose to determine if the complained of restraint violated Mr. Hyman's constitutional rights. *See* Bistrian v. Levi, 696 F.3d 352, 373 (3d Cir. 2012) (collecting cases).

Because defendants have not applied the correct law, there is no basis to grant summary judgment. For a pre-trial detainee, it is wholly irrelevant that courts have found more restrictive conditions to pass muster under the Eighth Amendment, because the Fourteenth Amendment provides greater protection. Here, Mr. Hyman complains that he was kept in mechanical restraints for his daily one hour retreat from his solitary cell. During these retreats, he had no contact with any other prisoners. Since defendants rely on the Eighth Amendment, they have not offered any non-punitive explanation. Lacking such justification, I see no reason why a detainee should be handcuffed when there was no possibility of interaction with another inmate. Rather, it seems to me that keeping Mr.

---

[5] The decision in Suprenant is against the great weight of authority interpreting Bell – even within the First Circuit itself. *See* Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995); Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988); Bryer v. Creati, 915 F.2d 1556 (1st Cir. 1990).

[6] Counsel incorrectly cited this case as Suprenant v. Rivas, 424 F.3d 5, 18 (**3d** Cir. 2005) (emphasis added). On page 14 of his brief, counsel cited Smith v. Merline, 797 F.Supp.2d 488, 504 (**3d** Cir. 2011) (emphasis added), but Smith is a District of New Jersey decision, not Third Circuit precedent. Counsel should be more careful with his citation, as another court may find the error to be a breach of his duty of candor toward the tribunal. PA ST RPC Rule 3.3.

5

Hyman in handcuffs was arbitrary and purposeless; therefore, it is permissible to infer that defendants meant to punish Mr. Hyman.

### B.) Count 2 – First Amendment Retaliation.

Mr. Hyman claims that defendants kept him in administrative segregation for eight months in retaliation for Mr. Hyman's filing grievances against Deputy Warden May. Mr. Hyman filed eleven grievances against Deputy Warden May while Mr. Hyman was in administrative segregation. Pl.'s Statement of Undisputed Facts ¶ 39. As Deputy Warden May chaired the SMRC meetings, Mr. Hyman believes that the SMRC denied his release from segregation in retaliation for the grievances. Defendants assert that Mr. Hyman cannot produce any evidence establishing a causal link between the grievances and Mr. Hyman's prolonged segregations. Rather, they insist that Mr. Hyman was not released into the general population because four separate searches uncovered weapons in Mr. Hyman's cell. Mr. Hyman attempts to rebut defendant's motion with circumstantial evidence of causation. However, the evidence is not enough to sustain his burden on summary judgment.

A prisoner pleading first amendment retaliation by prison officials must establish: "(1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him." Alexander v. Fritch, 396 F. App'x 867, 871 (3d Cir. 2010) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001)). Defendants do not dispute that Mr. Hyman has satisfied the first two elements of a

retaliation claim, but they deny that his grievances were a factor in keeping him in administrative segregation.

The circumstantial evidence produced by Mr. Hyman does not create an inference of retaliation. Plaintiff can establish causation by showing 1.) temporal proximity between the protected activity and adverse action, 2.) a pattern of antagonism after the protected act or 3.) the record taken as a whole supports an inference of retaliation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000); (Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) ("These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."). Temporal proximity, without more, may create an inference of causation if the timing is unusually suggestive. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989). Ordinarily, a period of less than one week is unusually suggestive. See Shenk v. Pennsylvania, 1:11-CV-1238, 2013 WL 1969311 (M.D. Pa. May 13, 2013) (collecting cases).

Mr. Hyman first tries to establish causation by pointing to the temporal proximity of the grievances to the SMRC meetings. As Mr. Hyman points out, there were seventeen SMRC meetings where the committee recommended that Mr. Hyman stay in administrative segregation. Pl.'s Statement of Facts ¶ 44. Mr. Hyman points to five meetings where he believes his grievances are temporally proximate. Pl.'s Resp. Br. (doc. no. 54) 16. However, two of these meetings are too remote from the filed grievance

7

to create an inference of retaliation.[7] Therefore, the committee decided to hold Mr. Hyman in segregation at only three meetings that could possibly give rise to an inference of retaliation. Yet, the committee reaffirmed this decision on fourteen other occasions sufficiently removed from any filed grievance.[8] A reasonable jury could not infer a retaliatory motive from three meetings of the SMRC when the committee met fourteen different times and took the same action without any evidence of retaliation.

   Next, Mr. Hyman points to the deposition testimony of Andra Jennings to establish that Deputy Warden May was unprofessional and vindictive.[9] Ms. Jennings was a social worker at CFCF and was present at each SMRC meeting which considered Mr. Hyman's release into the general prison population. Ms. Jennings testimony paints an unflattering picture of Deputy Warden May. According to Ms. Jennings, Deputy Warden May was the primary decision maker at the SMRC and ran the meetings in an unprofessional manner. Pl.'s Statement of Facts ¶ 56. He would not look prisoners' in the eye and he would tell the prisoners that there was no light at the end of the tunnel. Id. ¶ 57. She also testified that Deputy Warden May was not well regarded among the prisoners or other prison staff and that he was perceived as a slave owner. Id. ¶ 58.

---

[7] A grievance was filed three weeks prior to the October 15, 2008 meeting, and a grievance was filed two weeks before the December 9, 2008 meeting.

[8] Had Mr. Hyman filed the three temporally proximate grievances prior to the first meetings, then perhaps he could argue that the next fourteen meetings confirmed a retaliatory act. But that is not the case. The SMC met six times before Mr. Hyman filed his first grievance. Thus, there is no evidence of a retaliatory motive for the first six SMC meetings. Five months and nine SMC meetings later, Mr. Hyman filed his second temporally proximate grievance. Mr. Hyman filed the third grievance prior to the last SMC meeting on March 5, 2009. On March 11, 2009, Deputy Warden May granted Mr. Hyman's request to be transferred to another prison. Surely, no retaliatory motive can attach to this last SMC meeting when Deputy Warden May granted a request in Mr. Hyman's favor six days later.

[9] Mr. Hyman also testified that Deputy Warden May stated he was "tired of seeing all [Hyman's] grievances against me." This testimony is self-serving, and in any event, only establishes that Deputy Warden May had notice of the grievance. It does not establish that the grievances were a substantial and motivating factor.

However, Ms. Jennings' deposition is not evidence that Mr. Hyman's grievances were a substantial and motivating factor in keeping Mr. Hyman in administrative segregation.  The testimony suggests that Deputy Warden May was unprofessional, and perhaps unfair, to all prisoners in administrative segregation.  There is nothing in Ms. Jennings' testimony implying that Deputy Warden May had a particular vendetta against Mr. Hyman.  Indeed, when pressed on the issue, Ms. Jennings' stated that Mr. Hyman was not being kept in administrative segregation because Mr. Hyman had filed grievances against Deputy Warden May.  Dep. of Andra Jennings, Defs.'Br. Ex. K. (doc. no. 53-12), 53:8-25.  At best, this testimony establishes that Deputy Warden May was an unfriendly and unprofessional prison official and that he treated Mr. Hyman like he treated everyone else – poorly.  That is not enough to create a disputed issue of fact that Mr. Hyman's grievances were a substantial or motivating factor in holding Mr. Hyman in administrative segregation.

Finally, Mr. Hyman contends that his release from administrative segregation after his transfer to PICC is evidence that his segregation at CFCF was retaliatory.  On March 11, 2009, the Warden transferred Mr. Hyman from CFCF to PICC because other prisoners were threatening Mr. Hyman.  On April 14, 2009, the SMRC at PICC released Mr. Hyman into the general population.  This evidence clearly establishes that PICC did not think Mr. Hyman was vulnerable or a threat in the general population.  It is not evidence that the reason the SMRC at CFCF kept Mr. Hyman in segregation was because Mr. Hyman filed grievances against Deputy Warden May.  Mr. Hyman's subsequent release into general population at PICC could serve as circumstantial evidence of

9

retaliation if considered with other evidence of retaliation in the record. However, Mr. Hyman fails to point to any other evidence which supports an inference of retaliation.

Granting this motion is in keeping with the court's duty to enforce the causation requirement in a §1983 retaliation claim. The Third Circuit's admonition in <u>DeFlaminis</u> is particularly relevant in this case:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. **Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take**.

<u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007) (emphasis added). Here, the SMRC met on a regular schedule for the eight months that Mr. Hyman was in administrative segregation. Knowing when the SMRC would next meet, it seems unfair to allow Mr. Hyman to file a grievance immediately before the next meeting so that he could claim First Amendment retaliation when the committee's decision did not go his way. This is exactly the kind of conduct the Third Circuit has warned against. Rather, it appears that the SMRC had a legitimate concern that Mr. Hyman was a threat to prison safety given the undisputed history of contraband found in his cell. Since Mr. Hyman has not come forward with evidence that retaliation, rather than prison safety, motivated the SMRC's decision to keep Mr. Hyman in segregation, the SMRC should not be second guessed. *See* <u>DeFlaminis</u> 480 F.3d at 268. Therefore, I will grant summary judgment in favor of defendants on Mr. Hyman's first amendment claim.

### C.)   The City of Philadelphia and Individual Defendants in their Official Capacities.

Defendants maintain that all claims against the City of Philadelphia and the individual defendants in their official capacity should be dismissed.  First, the parties agree that suing the individual defendants in their official capacity is the same as suing the City of Philadelphia.  <u>Kentuck v. Graham</u>, 473 U.S. 159, 165-66 ( 1985).  Mr. Hyman does not contest that the claims against the individual defendants in their official capacity should be dismissed with prejudice.  Therefore, I will dismiss the claims against the individual defendants in their official capacities, but claims against the individual defendants in their individual capacities survive.

Next, the City contends that Mr. Hyman has not produced enough evidence to establish <u>Monell</u> liability.  I disagree.  A municipality is liable for constitutional violations committed by its employees when a plaintiff's rights are infringed as a result of the municipality's policy or custom.  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 694 (1978).  A prerequisite of <u>Monell</u> liability is an underlying constitutional violation. <u>Id</u>.  The city argues that it is not liable because "Plaintiff has failed to adduce any evidence that establish Plaintiff's claims under the Fourteenth Amendmen."  Defs.' Br. 16.  Since the city bases its argument on its flawed analysis of Mr. Hyman's conditions of confinement claim, their motion for summary judgment on <u>Monnell</u> fails as well.[10]

Mr. Hyman has produced evidence of a municipal policy requiring the shackling of all prisoners in administrative segregation during their daily one hour recreation.  First,

---

[10] I will not analyze <u>Monell</u> liability with regard to Mr. Hyman's First Amendment claim which I have dismissed.

11

Deputy Warden May testified at his deposition that "All administrative segregation all punitive segregation inmates are in full restraints when they come out for exercise." Dep. of Gerald May, Pl.'s Resp. Br. Ex. 1 (doc. no. 54-3), 62: 2-4.  Second, there is a written policy which dictates that, "Administrative segregation inmates moving in and out of the unit will be handcuffed and escorted." Philadelphia Prisons Policies & Procedures, Pl.'s Resp. Br. Ex. 4 (doc. no. 54-6), 8.  This evidence is more than enough to allow the claim against the City of Philadelphia to go forward.

### D.) Compensatory Damages

Defendants contend that Mr. Hyman's claim for compensatory damages is barred by the Prison Litigation Reform Act.  Pub. L. No. 104-134, 110 Stat. 1321-66 to 1321-77 (1996).  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The physical injury must be "less-than-significant-but-more-than-*de minimis*." Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003).  The Third Circuit has not provided a bright line rule for district courts to follow when applying this test to prisoner claims.  Indeed, the Eight Circuit, which applies the same test, noted that "no clear line divides *de minimis* injuries from others." Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008).

A survey of the decisions of the district courts in this circuit counsels against a finding that Mr. Hyman's injuries were *de minimis* as a matter of law.  Mr. Hyman claims that he suffered pain, lacerations, bruising, swelling, rashes, indentation and numbness in his extremities.  The parties dispute the severity of these injuries.  District courts have

been hesitant to find that an identifiable bodily injury was *de minimis* as a matter of law. Courts have granted summary judgment only when the plaintiff complains of wrongful conduct but fails to produce any evidence of a bodily injury resulting from physical contact.[11] On the other hand, Mr. Hyman's injuries seem at least as severe as other injuries which courts have allowed to go to trial.[12] The fact that Mr. Hyman received medical treatment for his injuries also suggests that § 1997e(e) does not bar his claim for compensatory damages. See Perez v. United States, CIV.A. 1:04CV1944, 2008 WL 2247192 (M.D. Pa. May 30, 2008) *vacated on other grounds*, 330 F. App'x 388 (3d Cir. 2009) (injuries that did not require medical attention were *de minimis*).[13] I conclude that

---

[11] *See* Knight v. Wapinsky, 3:12-CV-2023, 2013 WL 786339 (M.D. Pa. Mar. 1, 2013) (no injury claimed at all); Tsosie v. Bureau of Prisons, 3:CV-10-2360, 2012 WL 4484935 (M.D. Pa. Sept. 27, 2012) (prisoner who had painful bowel movement after being deprived access to a toilet for 10 hoursclaimed *de minimis* injury); Short v. Williams, 4:10-CV-2451, 2011 WL 134896 (M.D. Pa. Jan. 14, 2011) (exposure to asbestos without more is not a physical injury); Wagner v. Algarin, CIV.A. 10-2513, 2010 WL 5136110 (E.D. Pa. Dec. 16, 2010) (sleeping in gyms, classrooms, multipurpose rooms and overcrowded cells is nota physical injury); Simpson v. Chester Cnty. Prison, CIV. A. 10-905, 2010 WL 3323119 (E.D. Pa. Aug. 19, 2010) (trouble sleeping is a *de minimis* injury); Oliver v. Beard, 4:10-CV-1387, 2010 WL 3303782 (M.D. Pa. Aug. 19, 2010) (residing in same cell as alleged abuser is not a physical injury); Michtavi v. United States, 4:07-CV-0628, 2009 WL 578535 (M.D. Pa. Mar. 4, 2009) aff'd, 345 F. App'x 727 (3d Cir. 2009) (theft, false accusations and fraud are not physical injuries); Albert v. Karnes, CIV.A. 1:07-CV-0007, 2008 WL 755804 (M.D. Pa. Mar. 19, 2008) (being labeled a snitch is not a physical injury); Reseigh v. Fischi, 3:CV-06-1911, 2006 WL 3254537 (M.D. Pa. Nov. 9, 2006) (being shoved is not a physical injury); Flowers v. Lebanon Cnty. Prison, CIV. 3:CV-02-0136, 2006 WL 118363 (M.D. Pa. Jan. 13, 2006) (no injury claimed at all);McClellan v. Pike Cnty., 1:04 CV 2588, 2005 WL 2234645 (M.D. Pa. Sept. 14, 2005) (being denied access to a multi-purpose room for Muslim prayer service is not a physical injury); Font v. Luzerne Cnty., 4:CV-05-1226, 2005 WL 1653445 (M.D. Pa. July 12, 2005) (no injury claimed at all).

[12] *See* Carter v. United States, 3:11-CV-1669, 2012 WL 2115343 (M.D. Pa. June 11, 2012) *vacated on other grounds,* 3:11-CV-1669, 2013 WL 1149247 (M.D. Pa. Mar. 19, 2013)(food poisoning); Merritt v. Fogel, CIV. A. 07-1681, 2010 WL 3489152 (W.D. Pa. July 23, 2010) *report and recommendation adopted*, 2:07-CV-1681, 2010 WL 3448618 (W.D. Pa. Sept. 1, 2010) (liver failure); Jacobs v. Durko, CIV. A. 04-1941, 2008 WL 4279755 (W.D. Pa. Sept. 12, 2008) (vague allegation of physical pain and other injuries); Jones v. Schouppe, CIVA 06-1083, 2008 WL 163049 (W.D. Pa. Jan. 15, 2008) (failure to provide a diabetic friendly diet); Such v. Vincent, CIV A 06-85J, 2007 WL 906170 (W.D. Pa. Mar. 22, 2007) (urinary tract infections and incontinence); Bond v. Rhodes, 2:05CV241, 2006 WL 1617892 (W.D. Pa. June 8, 2006) (upset stomach and diarrhea).

[13] Although not precedential, Perez is the closest the Third Circuit has come to clearing up this malleable test. While neither accepting nor rejecting a test based on the need for medical attention, the Court of Appeals remanded the case because there was a disputed issue of fact as to whether the plaintiff received medical attention.

13

whether Mr. Hyman's injuries were more than *de minimis* is a disputed question of fact best resolved by a jury.[14]

## IV    CONCLUSION

For the foregoing reasons, I will enter summary judgment in favor of defendants on Count II of plaintiff's complaint claiming First Amendment retaliation. I will also dismiss claims asserted against the individual defendants in their official capacities. Defendants' motion is otherwise denied.

An appropriate order follows.

---

[14] My conclusion is also supported by the purpose behind the physical injury requirement. Congress added the physical injury requirement "to curtail frivolous and abusive prisoner litigation." Mitchell, 318 F.3d at 535. The Third Circuit has imposed the more-than-*de minimis* standard to prevent a prisoner from claiming an emotional injury resulting from a "paper cut." Id. While I doubt that the Court of Appeals meant that a paper cut should be the baseline, I do believe that such minor injuries are the types of frivolous claims Mitchell counsels against. The severity of Mr. Hyman's injuries are disputed, but I am confident, at the very least, that his injuries are not frivolous.